# EXHIBIT E



**Alexander Rios**
Senior Lease Auditor

CBRE, Inc.
Enterprise Global Services
Portfolio Services

705 S Jackson St
Belleville, IL 62220

+1 773-328-8133 Tel

Alexander.Rios@cbre.com
www.cbre.com

November 19, 2025

*Via E-Mail and Overnight Federal Express*

St. Louis Leased Housing Associates Master
Tenant V, LLLP
2905 Northwest Boulevard, Suite 150
Plymouth, MN 55441
Attention: Jeffrey R. Hugget

Delivered via Fedex 11/20/2025
Tracking: 395537294340

U.S. Bancorp Community Development Corporation
1307 Washington Ave., Suite 300
St. Louis, MO 63103
Attention: Director of Asset Management – NMTC & HTC

Delivered via Fedex 11/20/2025
Tracking: 395537763481

Winthrop & Weinstine, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
Attention: Matthew R. McBride
Email: MMcBride@winthrop.com

Delivered via Fedex 11/20/2025
Tracking: 395537659626

Winthrop & Weinstine, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
Attention: Jon L. Peterson, Esq.
Email: jpeterson@winthrop.com

Delivered via Fedex 11/20/2025
Tracking: 395537659626

Dominium
2905 Northwest Blvd, Suite 150
Plymouth, MN 55441-2644
Attention: Jeffrey R. Hugget
Email: Jhuggett@Dominiuminc.com

Delivered via Fedex 11/20/2025
Tracking: 395537294340



**Alexander Rios**
Senior Lease Auditor

CBRE, Inc.
Enterprise Global Services
Portfolio Services

705 S Jackson St
Belleville, IL 62220

+1 773-328-8133 Tel

Alexander.Rios@cbre.com
www.cbre.com

**Lease Audit Report**

**RE: Office Lease dated June 4, 2014 ("Lease") between WEBSTER UNIVERSITY, a Missouri nonprofit corporation ("Tenant"), and ST. LOUIS LEASED HOUSING ASSOCIATES MASTER TENANT V, LLLP, a Missouri limited liability limited partnership ("Landlord"), relating to the premises in the building commonly known as the Arcade Building located at 800 Olive Street, St. Louis, Missouri, as further set forth in the Lease (the "Premises")**

Dear Landlord,

As previously stated, per letter dated May 8, 2025, Tenant has contracted with CBRE, Inc. ("CBRE") to conduct a review of the Rent Payments, Operating Expenses, Real Estate Tax and other financial considerations related to the above-mentioned lease. Please see below for a follow-up to outstanding issues, as well as CBRE's 2024 audit findings.

## Outstanding Issues:

First, CBRE wishes to point out that Landlord, despite being informed numerous times, and as early as 8/8/2024, of its failure to calculate the 2023 Reconciliation per the terms of the Lease – specifically, using an incorrect pool of expenses and incorrect pro-rata share of these expenses – knowingly and willfully violated the terms of the Lease, as well as its own Declaration (as defined by Lease section 1.14), to the continued detriment of Tenant by performing the 2024 Reconciliation using the same incorrect methodology it used in 2023, rather than the methodology agreed to in the Lease. To date we have received no substantive response which explains Landlord's unilateral change to these legal documents, nor any formal response at all to the additional concerns raised in our 2023 Audit Report delivered 1/21/2025.

Landlord did informally acknowledge a portion of the 2023 Report by removing 160 "in unit" expenses from Tenant's expense pool as part of their reconciliation process for 2024. Similar expenses were noted as impermissible in the 2023 Audit Report, being labelled as "Market Rate Unit" expenses. Nevertheless, auditor found an additional 107 expenses which should be removed from the pool as "Market Rate Unit" expenses, further proving the need for Landlord to institute accounting practices in line with the Lease and Declaration.

Finally, regarding the outstanding Parking escalation issue, in your letter dated 10/30/2024, you indicate an acceptance that the parking charges were erroneously escalated since at least 2019. You offered to reimburse 2023, as well as correct 2024, however offered no justification for not

11/19/2025
800 Olive Street, St. Louis, MO
Webster University
Page 3

reimbursing 2019 through 2022. We wish to point out that the final and binding language contained in Lease section 4.2 applies only to the annual OPEX Statement, which is to reconcile items of Additional Rent. The Parking Rent is described with, and considered a part of, Base Rent per Lease section 1.35(a) which is not subject to escalation or reconciliation. We trust you agree the remainder of the Parking overcharge should be refunded to Tenant totaling $22,257.78 in the aggregate as it relates to years 2019 through 2022.

## *Summary of Findings:*

**Common Area Utilities**
Lease Reference:
- Lease section 1.35(b)(iii) includes as Additional Rent, "80% of separately metered heat and electricity, in the Common Area located on the first floor of the Building, consisting of 4,869 square feet".
- Lease section 4.3(h) includes Utilities with Operating Expenses "to the extent not included with Additional Rent, or to the extent not separately metered to Tenant... reasonably allocated to the Landlord Condominium".

As Tenant pays 100% of the Electricity and Gas for the Lease Premises, 80% of the Electricity and Gas for the first-floor common area and elevator, and their pro-rata share of Electricity and Gas for the Parking area, it is unreasonable to allocate any additional utilities to Tenant's expense pool. The various spaces to which Tenant has access are separately metered as contemplated in section 4.3(b), eliminating the need to allocate any additional space to Tenant. The additional common area space is also not just residential access hallways but includes residential tenant amenities such as a yoga studio, fitness center, and swimming pool, all which Tenant does not have access to. The Common Area Utilities, specifically Electricity and Gas, totaling $195,583.56, and detailed more specifically as part of Exhibit 1, should be removed from the Operating Expenses pool charged to Tenant.

**Cost of Ownership**
Lease Reference:
- Lease section 4.3 defines Operating Expenses as "all expenses and costs reasonably incurred in connection with operating, maintaining, repairing, and protecting the Landlord Condominium".
- Lease section 4.3(a) includes with Operating Expenses "reimbursement to Landlord for all service contracts for independent contractors and for the cost to Landlord of wages, employment taxes and benefits of all Landlord Condominium and staff management and maintenance employees directly employed at or in connection with the Landlord Condominium management".

11/19/2025
800 Olive Street, St. Louis, MO
Webster University
Page 4

- Lease section 4.3(g) includes with Operating Expenses "other incidental and reasonable costs related to the management and operations of the Landlord Condominium".

CBRE's review also found that Landlord has included "Cost of Ownership" items in the 2024 Expense Pool, including employee attendance at leadership conferences and other off-site training, logoed uniforms, and employee parking spaces. See Exhibit 2 for a complete list. These expenses are neither customary, nor reasonable, inclusions in Operating Expenses and should not be the responsibility of Tenant. Landlord is responsible for the recruitment and training of its employees; for the maintenance of its website, should it choose to have one; and for the costs of memberships to associations such as the National Apartment Association, as these costs are part of the operation of the *Landlord entity*, rather than the operation of the *Building.* Unlike a window repair, or extermination services, which are necessary to the operation of the Building, none of these previously listed activities provides any actual benefit to Tenant, can be classified as Building operations, or are permitted to be passed through to Tenant by the Lease.

Further, these costs have no reasonable limit. For instance, if such expenses were permitted, the Landlord could pass on the cost of membership to any number of associations, regardless of its usefulness to the operation of the Building. Likewise, should Landlord fail to properly recruit, train, and retain its employees, Tenant would be responsible for the cost of ongoing recruitment, training, and furnishing of uniforms for new Landlord employees, despite Landlord being responsible for the failure to perform these duties adequately. The total cost of expenses listed on Exhibit 2 is $18,668.66, all of which should be removed from Tenant's Operating Expense pool.

**Insurance**
Lease Reference:
- Lease section 1.35(b)(ix) includes as Additional Rent "any insurance solely relating to the Premises, if any".
- Lease section 1.5(iii) defines the LIHTC Unit as "located on part of floor 3 and throughout floors 4-14, which will contain 202 affordable apartment units".
- Lease section 4.3(i) includes with Operating Expenses "insurance premiums… reasonably allocated to the Landlord Condominium (excluding any insurance premiums attributable solely to the Market Rate Unit".

Upon review of the Insurance invoices provided by Landlord as substantiation of Insurance costs passed through to Tenant, CBRE found that Landlord has included Insurance premiums specifically attributable to the LIHTC Unit, which is neither part of the Premises, nor included in the Landlord Condominium. The total amount of LIHTC attributable insurance premiums is $167,995.52, all of which should be removed from the Tenant's expense pool. Please see Exhibit 3 for further details.

11/19/2025
800 Olive Street, St. Louis, MO
Webster University
Page 5

**Market Rate Unit Expenses, Portal Costs, & Resident Surveys**
<u>Lease Reference:</u>
- Lease section 4.3(xviii) excludes from Operating Expenses "any specific allocation for specific expenses which are solely imposed on the owner of the Market Rate Unit under the Declaration".
- Lease section 1.14 defines the Declaration as "That Declaration of Condominium and By-Laws of Arcade Building Condominium".
- Declaration sections 1.1(2)(c)(7, 8, & 9) include with Market Rate Administrative & Operating Expenses "portal costs; resident surveys, leasing incentives, and interest due on security deposits; the costs and expenses to make the Individual Dwelling Units with [sic] Market Rate Unit "rent ready"".
- Declaration section 1.1(2)(c)(13) includes with Market Rate Administrative & Operating Expenses "any other items which are any Unit Expenses for the Market Rate Unit".

Landlord's 2024 Reconciliation also includes a wide variety of explicitly excluded expenses. At the category level, Landlord included both Portal Costs (GLs 6275-0300, 6275-0600, 6338-0000), and Resident Surveys (GL 6339-0000) in Tenant's expense pool, despite these being included as "Market Rate Unit Expenses", which are excluded by the Lease from Operating Expenses.

Additionally, throughout the General Ledger provided by Landlord for review, there are 107 individual expense entries (as identified by Landlord's GL "Control" number) which can be attributed either directly to a specific residential unit, to the residential units operations generally, to "rent ready" expenses, generally referred to as "turn costs", or to the repair and maintenance of residential amenities. Examples include bed bug treatment in unit 1207, the cost for LIHTC unit residential "artists" applications, garbage disposals and other residential plumbing supplies, and parts for fitness equipment. A complete listing of the charges identified is included as Exhibit 4. The total amount identified is $76,333.80 and should be removed from Tenant's expense pool.

**Legal Fees**
<u>Lease Reference:</u>
- Lease section 4.3(ix) specifically excludes "attorney's and accountant's fees" from Operating Expenses.

Landlord's 2024 Reconciliation included $32,909.05 in Legal Fees billed directly to Tenant, despite the language noted above. While Lease section 4.3(f) does allow a small band of legal fees related to the operation of the Landlord Condominium, it is neither reasonable, nor customary for a landlord to engage attorneys to respond to basic questions related to an operating expense reconciliation. The total amount of $32,909.05 should be removed from the Reconciliation.

11/19/2025
800 Olive Street, St. Louis, MO
Webster University
Page 6

**Telephone**
<u>Lease Reference:</u>
- Lease section 4.3(vi) excludes from Operating Expenses "…expenses incurred in connection with negotiations for leases with tenants (including Tenant), other occupants, or prospective tenants…"
- Lease section 4.3(xix) excludes from Operating Expenses "any specific allocation for specific expenses which are solely imposed on the owner of the Market Rate Unit under the Declaration."
    - Declaration section 1.1(2)(d) describes "Residential Administrative and Operating Expenses" as "any specific legal, leasing, operating, and accounting expenses associated on a combined basis with the LIHTC Units and the Market Rate Unit…"

CBRE's review found that Landlord included $24,405.65 in Telephone costs for 2024, a volume of calls that can only be attributed to either contacting prospective residents, in violation of Lease section 4.3(vi), or contacting existing residents regarding delinquent rent, in violation of Lease section 4.4(xix) as these Residential Administrative and Operating Expenses are only applicable to the Landlord Condominium via allocation of these costs to the Market Rate Unit. These expenses should be removed from Tenant's expense pool.

**Capital Improvement Costs**
<u>Lease Reference:</u>
- Lease section 4.3(k) defines the allowable capital improvement costs as "repair or replacement of heating, ventilation and air conditioning systems for the Landlord Condominium necessary to comply with changes to applicable governmental rules, regulations, codes, orders, ordinances or Prime Documents that are enacted, or first interpreted to apply to the Landlord Condominium after the Date of this Lease."

Review of the Landlord's 2024 General Ledger and Reconciliation also identified 3 separate expenses which would qualify as Capital Improvements, as Landlord included these expenses with the section titled "Major Repairs/Capital Improvements". See Exhibit 5 for additional details.
- Outdoor Furniture – Landlord purchased $25,173.29 in outdoor furniture, and itself classified the expense as "Major Repairs/Capital Improvements."
- Elevator Hoist Rope – The Elevator Hoist Rope was replaced in freight elevator car 4, totaling $29,304.01.
- HVAC Repairs – Landlord also included $54,942.03 in HVAC repairs, all of which were incurred in relation to the same incident in which the heat and hot water went down for the entire building.

11/19/2025
800 Olive Street, St. Louis, MO
Webster University
Page 7

All of these expenses are material, and either extend the useful life of the underlying asset or has a useful life of greater than one year. Per the Lease language above, and Landlord's own accounting process, these expenses totaling $119,419.33 should be removed from Tenant's expense pool.

**Remaining 2024 Expenses**
Regarding the remaining Reconciliation expenses, as stated previously, and reinforced by the evidence described herein, Tenant objects to the manner in which Landlord has calculated Tenant's pro-rata share of expenses, and to the inclusion of LIHTC expenses and other explicitly excluded expenses in the pool for which Tenant is responsible. This calculation method change is a unilateral modification of the Lease between the parties for the Premises, as well as a failure on Landlord's part to properly administer the Lease, and the Declaration which the Lease references. Per Declaration section 1.1(2), Landlord, acting as Association manager, is to "track, allocate, and divide" expenses for the Building into six different categories representing the Commercial Unit, LIHTC Unit, Market Rate Unit, Residential Administrative and Operating Expenses, Residential Marketing Expenses, and Common Administrative and Operating Expenses. In fact, Landlord admitted to such failure during a call on 9/18/2024 attended by all parties, confirming they did not setup the accounting as described in the Lease and Declaration, and that doing so at this point would be difficult. To date, Landlord has presented no evidence or explanation which would justify this failure.

To further illustrate why Tenant must insist on the appropriate methodology being used, the erroneous inclusion of the LIHTC Insurance resulted in an overcharge to Tenant of 27.9% in 2024. See Exhibit 3. CBRE believes that a similar ratio exists in the expenses remaining in the Reconciliation expense pool, but a complete, exhaustive review of expenses places an undue burden on Tenant to resolve Landlord's own accounting process failures at Tenant's expense.

Tenant has again demonstrated that Landlord's calculation includes expenses that should otherwise be excluded in determining Tenant's appropriate share of expenses. As such, attached as Exhibit 6, you will find updated 2024 Reconciliation calculations which consider not only the expenses noted above to be removed, but also a 27.9% discount on the remaining expenses using the Insurance error rate as a proxy to attempt to determine an equitable total for Tenant's responsibility. While this methodology is admittedly imperfect, Tenant has no other recourse given Landlord's recalcitrance toward the Audit process, and refusal to honor the terms of the Lease. A corrected 2024 Management Fee based on the updated 2024 Gross Receipts can be found in Exhibit 6 as well. Based on these updated figures, Tenant is due a total of $244,177.53 for 2024.

Tenant reserves the right to re-open the audit process if Tenant learns of facts inconsistent with the assumptions made by Tenant in connection with this letter, or as a result of Landlord not providing all requested documentation.

11/19/2025
800 Olive Street, St. Louis, MO
Webster University
Page 8

If you have any questions, please do not hesitate to contact Alexander Rios at 773-328-8133 or via email at Alexander.Rios@cbre.com, or Al Stabile at 201-681-0244 or via email at Albert.Stabile@cbre.com.

Thank you,

*Zander Rios*

Alexander Rios
Senior Lease Auditor - CBRE

CC:    Albert Stabile, CBRE < albert.stabile@cbre.com >
       Kate Childress, CBRE < kate.childress@cbre.com >
       William Donovan, Webster University < williamdonovan@webster.edu >
       Jeanene George, Webster University < jeanenegeorge96@webster.edu >
       Heather Boelens, BCLP LLP < heather.boelens@bclplaw.com >
       Ben Ford, BCLP, LLP < ben.ford@bclplaw.com >